UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BONNIE BRIGHT,

    Plaintiff,

v.

CHERYL FLAISHER and STATE
FARM FIRE AND CASUALTY
COMPANY,

    Defendants.
_____ /

Case No. 20-11311

Hon. George Caram Steeh

OPINION AND ORDER GRANTING STATE FARM'S
MOTION FOR SUMMARY JUDGMENT (ECF NO. 36)

Defendant State Farm Fire and Casualty Company seeks summary judgment in its favor on its claim for declaratory judgment. For the reasons explained below, State Farm's motion is granted.

I.     PROCEDURAL HISTORY

Plaintiff, Bonnie Bright, initially filed her complaint against Defendant Cheryl Flaisher, asserting that Flaisher violated the Fair Housing Act and the Elliott-Larsen Civil Rights Act by denying her housing because of her three-year-old daughter. (ECF No. 1). Bright then filed an amended complaint, adding Flaisher's insurance carrier, State Farm Fire and Casualty Company, as a defendant. (ECF No. 17). State Farm filed a cross

- 1 -

claim against Flaisher and a counterclaim against Bright, seeking a declaratory judgment that it owed neither a defense nor indemnification to Flaisher under either the Rental Dwelling Policy or the Homeowners' Policy that it issued to Flaisher. (ECF Nos. 23, 25, 26). State Farm filed a motion for summary judgment on its declaratory judgment claims, to which only Bright responded. (ECF Nos. 36, 40). The court held a hearing via video conference.  (ECF No. 39). Subsequently, this case was reassigned from the docket of Judge Stephanie Dawkins Davis to the undersigned after Judge Davis was appointed to the Court of Appeals for the Sixth Circuit.

II.     FACTUAL BACKGROUND

In her amended complaint, Bright alleges that she contacted Flaisher about renting the upper flat of her property located at 1146 Maryland, Grosse Pointe Park, Michigan. Bright claims that she passed the background check and paid a security deposit and that Flaisher told her that the flat was hers. (ECF No. 17, PageID.100). However, Flaisher later notified her that she would not be renting to her because she has a child. (ECF No. 17, PageID.101). Flaisher offered to return the security deposit and referred Bright to someone else with available rental property. *Id*. Bright complained to the Fair Housing Center of Metropolitan Detroit. *Id*. An investigator from the Fair Housing Center interviewed Flaisher and

confirmed she did not want to rent the flat to Bright because she has a child, and that she had already rented the flat to someone without children. (ECF No. 17, PageID.101-102).

Bright contends that Flaisher's actions forced her to obtain less suitable housing, and she suffered economic and noneconomic injuries, such as embarrassment, humiliation, anxiety, loss of personhood and violations of her civil rights. (ECF No. 17, PageID.102). Bright also alleges that Flaisher's actions were "intentional, malicious and in wanton or reckless disregard of her rights and feelings due to her familial status, entitling her to an additional award of punitive damages and/or exemplary damages." *Id*.

State Farm issued two insurance policies to Flaisher: a Rental Dwelling Policy and a Homeowners' Policy covering her personal residence. *See* ECF Nos. 36-2, 36-3. After Flaisher became aware of Bright's allegations against her, she contacted State Farm, requesting assistance in responding to the claim. (ECF No. 36-4, Affidavit of Cheryl Taggart). After completing its investigation, State Farm denied coverage. (*Id*.; *see also* Dkt. 36-5, denial letter). The denial letter stated that the personal injury involved was specifically excluded by the policy:

> The insuring agreement is not met as to Bodily
> Injury, Property Damage, or personal Injury, caused

>by an occurrence. While there may be Personal Injury with regard to the allegations, personal injury caused by a violation of a penal law or ordinance, committed by or with the knowledge or consent of any insured, is specifically excluded.

(ECF No. 36-5, PageID.560).

III.    ANALYSIS

    A.    Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Dist. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In response to a properly supported motion for summary judgment, the opposing party must come forward with specific evidence showing there is a genuine issue of fact for trial. A "mere scintilla" of evidence is insufficient

to meet this burden; the evidence must be such that a reasonable jury could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252.

B. <u>Coverage under the Policies</u>

In Michigan, "a policy of insurance is much the same as any other contract. It is a matter of agreement by the parties. The courts will determine what that agreement was and enforce it accordingly." *Eghotz v. Creech*, 365 Mich. 527, 530 (1962).[1] Specifically, courts enforce policy language that is clear, unambiguous, and not contrary to public policy. *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566-67 (1992).

State Farm argues that under either policy – the Homeowners' or the Rental Policy – the claimed actions for which Bright seeks to recover from Flaisher are not "accidental" and thus are not "occurrences." The rental policy defines "occurrence" as follows:

> 8. "occurrence," when used in Section II of this policy, *means an accident*, including exposure to conditions, which results in:
>
> a. bodily injury;
>
> b. property damage; or
>
> c. personal injury;

---

[1] The parties do not appear to dispute that Michigan law applies to this diversity case. *See Prestige Cas. Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340, 1348 (6th Cir. 1996) ("In diversity cases, this court applies state law in accordance with the controlling decisions of the Michigan Supreme Court.").

> during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

Similarly, the homeowner's policy defines "occurrence" as follows:

> 13. "occurrence", when used in Section II of this policy, *means an accident*, including accidental exposure to conditions, which first results in:
>
> a. bodily injury; or
>
> b. property damage;
>
> during the policy period. All bodily injury and property damage resulting from one accident, series of related accidents, or from continuous and repeated exposure to the same general conditions is considered to be one occurrence.

State Farm argues that, for Flaisher to be entitled to defense or indemnification, the acts complained of must be accidental. Although "accident" is not defined in the policies, Michigan law defines accident as:

> anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected by the person injured or affected thereby that is, takes place without the insured's foresight or expectation and without design or intentional causation on his part. In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.

- 6 -

*Hawkeye-Security Ins. Co. v. Vector Constr. Co.*, 185 Mich. App. 369, 374 (1990) (citation omitted); *accord Skanska USA Bldg. Inc. v. M.A.P. Mech. Contractors, Inc.,* 505 Mich. 368, 378 (2020).

Flaisher is alleged to have intentionally refused to lease the upper flat of her Grosse Pointe Park property to Bright because she had a child, in violation of the FHA and ELCRA. There are no allegations in the amended complaint that Flaisher acted accidentally, or somehow mistakenly failed to rent the property to Bright. Rather, Bright expressly alleges that Flaisher's actions were intentional and malicious, entitling her to punitive damages and/or exemplary damages.

The Michigan Court of Appeals has held that similar claims are not entitled to coverage under insurance policies that define "occurrence" as an "accident." In *Greenman v. Michigan Mut. Ins. Co.*, 173 Mich. App. 88 (1988), the insureds (a law firm and attorneys) sued their insurer for denying a defense to a claim of sexual harassment and discrimination by an attorney involving another employee of the firm. The court found that an "occurrence" – defined in the policy as an accident – did not include sexual harassment. Rather, the complaint alleged conduct that was willful, malicious, and intentional. Accordingly, because the "injuries arose from intentional rather than accidental acts, there was no 'occurrence.'" *Id*. at 91-

92. *See also Nat'l Ben Franklin Ins. Co. of Michigan v. Harris*, 161 Mich. App. 86, 88-90 (1987) (finding no insurance coverage when claims were not based on an accident but on "discriminatory acts intentionally engaged in by defendants"); *Farm Bureau Gen. Ins. Co. of Michigan v. Jones*, 2022 WL 1509302, at *4 (Mich. App. May 12, 2022) (allegations of discrimination and sexual harassment in violation of the FHA not an "accident" under the policy).

Bright argues that although Flaisher intentionally refused to rent to her, Flaisher did not intend the resulting harm and bore no ill will towards Bright. Bright suggests that because Flaisher did not intend the resulting harm, it was "accidental" and thus covered under the policy. Michigan law is to the contrary, however. "[W]hen an insured's intentional actions create a direct risk of harm, there can be no liability coverage for *any* resulting damage or injury, despite the lack of an actual intent to damage or injure." *Nabozny v. Burkhardt*, 461 Mich. 471, 478 (2000) (citation omitted; emphasis in original). In other words, because Flaisher acted intentionally and created a direct risk of harm by refusing to rent to Bright, Flaisher's lack of intent to harm or ill will towards Bright is not relevant to the coverage analysis.

C. <u>Conclusion</u>

Under the applicable authority and plain language of the insurance policies, Flaisher's conduct is not an "accident" and there is no "occurrence" triggering coverage. Accordingly, State Farm does not have a duty to defend or indemnify Flaisher under the policies.

<u>ORDER</u>

IT IS HEREBY ORDERED that State Farm's motion for summary judgment (ECF No. 36) is GRANTED.

Dated: July 12, 2022

                                      <u>s/George Caram Steeh</u>
                                      GEORGE CARAM STEEH
                                      UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 12, 2022, by electronic and/or ordinary mail.

<u>s/Brianna Sauve</u>
Deputy Clerk